## Breeding v. Polly.

(Decided October 30, 1913).

Appeal from Letcher Circuit Court.

Evidence—Decision of Lower Court on.—When only questions of fact are involved in the case, this court will not interfere with the finding of fact by the lower court unless its finding is against the weight of the evidence.

R. O. BRASHEARS, S. C. TYREE for appellant.

D. D. FIELDS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is a contested election case involving the title to the office of school trustee in sub-district No. 3, division 8, of Letcher County. At the election held in August, 1912, the appellant, Breeding, and the appellee, Polly, were the contending candidates for trustee. In this sub-district Breeding, who claimed to have been elected, was recognized as trustee by the county superintendent of schools, H. C. Dixon. A few days after the election, and within the time allowed by statute, Polly brought this suit against Breeding and the superintendent, contesting the election of Breeding and asking that he, Polly, be declared to have been elected trustee and that Dixon, superintendent, be required to recognize him as such. The grounds of contest were that he had received more legal votes than Breeding and that certain named persons not entitled to vote at the election were permitted to and did vote for Breeding.

Breeding, in due time, filed an answer and counter-contest, in which he asserted title to the office, denied the averments of the petition and averred that certain named illegal votes had been cast for Polly. After a number of depositions had been taken for both parties, the case was submitted for judgment, and the court, after deducting from Polly's vote two votes, held that he had received a majority, and was, therefore, entitled to the office. It is from this judgment that Breeding appeals.

The school law provides that at elections held for the purpose of electing trustees the voters shall select the officers of election, so that when the voters assembled at the voting place the first question that came up was the question of selecting officers to hold the election. It seems to be conceded that by agreement between the cadidates the voters favorable to each stood in different lines, and Harrison Banks was selected as the representative of Polly and John W. Collins was selected as the representative of Breeding to count the votes in the respective lines. After they had made their count Banks reported that Polly had 29 votes and Breeding 24 and Collins reported that Breeding had 26 votes and Polly 25. When these counters were unable to agree as to which side had the majority, no further effort was made to ascertain in this manner the number of adherents for each party. But Polly and his friends, relying on Banks' statement that he had received a majority of the votes

and was, therefore, entitled to name the officers of election, selected three officers. Breeding and his friends, relying on the count made by Collins, which showed that Breeding had a majority, also selected three officers to hold the election. The result was that two elections were held at the same time and place, one by the officers selected by Polly and his friends and the other by the officers selected by Breeding and his friends. The voters favorable to Polly voted at the election held by the officers designated by his side and the voters favorable to Breeding voted at the election held by the officers favorable to Breeding.

There is much dispute in the evidence as to how many votes each party had in the selection of officers of the election, and also much dispute as to how many votes each party received at the respective elections. The witnesses for Polly say that, excluding the illegal votes that Breeding received, Polly had a majority of from two to five votes, and the witnesses for Breeding say that, excluding the illegal votes cast for Polly, Breeding had a majority of from two to five votes.

It would not be profitable to extend this opinion in discussing the relative merits of this controversy or in giving in detail the statements of the witnesses for either side. It is sufficient to say that there is much confusion and uncertainty as to which of the contestants had a majority of the votes. We do not find in the record the poll book kept by the officers on either side, and the evidence as to the illegality of the votes cast for each party is about equal in volume and character. Under these circumstances we are disposed to accept as correct the judgment of the lower court.

The judgment is affirmed.